# In the United States Court of Federal Claims

No. 20-354 C
(Filed: March 31, 2021)

```
* * * * * * * * * * * * * * * * *  *
                                   *
ASSOCIATED MORTGAGE               *
BANKERS INC.,                     *
                                   *
                                   *
              Plaintiff,           *
                                   *
       v.                          *
                                   *
THE UNITED STATES,                 *
                                   *
              Defendant.           *
                                   *
* * * * * * * * * * * * * * * * *  *
```

*David Monro Souders*, Weiner, Brodsky & Kider, P.C., of Washington, D.C., for plaintiff.

*Sheryl Lynn Floyd*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were, *Kenneth M. Dintzer*, Deputy Director, *Robert E. Kirschman, Jr*., Director, and *Ethan Davis*, Acting Assistant Attorney General, all of Washington, D.C., for defendant.

## OPINION AND ORDER

**SOMERS**, Judge.

      This case is brought by Associated Mortgage Bankers Inc. ("Plaintiff" or "AMB"), on behalf of itself and a putative class, against the United States, the U.S. Department of Housing and Urban Development ("HUD"), and former HUD Secretary Ben Carson "in his official capacity" for breach of contract and breach of the covenant of good faith and fair dealing. ECF No. 1 at 1 ("Compl."). Specifically, Plaintiff contends that HUD breached an indemnification agreement with Plaintiff (and agreements with other similarly situated lenders) and is thus barred from enforcing its terms against Plaintiff. The complaint seeks "restitution, disgorgement, declaratory, and injunctive relief" against the named defendants. *Id*. at 2.

      Before the Court are the government's separate motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). The motions have been briefed, and the Court held oral argument on February 23, 2021. As explained below, the Court finds that this case is based on substantially the same operative facts as those in an earlier-filed action that was pending in the United States District Court for the District of Columbia at the time Plaintiff filed its complaint in this Court. Accordingly, pursuant

to 28 U.S.C. § 1500, the government's motion to dismiss for lack of subject-matter jurisdiction is **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

### A. HUD Mortgage Insurance and Asset Sales

Congress created the Federal Housing Authority ("FHA") in 1934, which later became part of HUD's Office of Housing.  Compl. ¶ 8.  FHA "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories." *Id.* ¶ 9. According to HUD's website, "FHA mortgage insurance provides lenders with protection against losses if a property owner defaults on their mortgage.  The lenders bear less risk because FHA will pay a claim to the lender for the unpaid principal balance of a defaulted mortgage." *Id.* ¶ 10 (quoting *The Federal Housing Administration (FHA)*, HUD.gov, https://www.hud.gov/program_offices/housing/fhahistory).  "The account from which FHA pays insurance claims is known as the Mutual Mortgage Insurance Fund (the 'MMI Fund')." *Id*. ¶ 11.

If a loan covered by FHA mortgage insurance defaults, the mortgage holder or servicer generally will either foreclose on the property or obtain a deed-in-lieu of foreclosure. *Id*. ¶ 12. The mortgage holder or servicer will then usually make an insurance claim to FHA for their losses and convey title to the property to HUD in return. *Id.* ¶ 13.  "HUD will then generally dispose of any collateral it receives in exchange for paying an insurance claim from the MMI Fund in order to recoup the losses due to paying the insurance claim." *Id*. ¶ 14.  FHA can also accept assignment of the mortgage in exchange for an insurance payout. *See* 12 U.S.C. § 1710(a)(1)(A).

"In 2002, HUD began exploring a new demonstration program, known as Accelerated Claim Disposition ('ACD'), to dispose of collateral it received after paying insurance claims." Compl. ¶ 15.  Since then, "HUD has operated a number of programs that entail the bulk sale of notes" to private-sector bidders "and it has identified such programs by a number of names over time," including, as most relevant here, the Single Family Loan Sales ("SFLS") program. *Id*. ¶ 16.

In October 2002, following notice and comment rulemaking, "HUD published a final 'Notice of FHA Accelerated Claims Disposition Demonstration' which formally established the [ACD] demonstration program" (*id*. ¶ 17), after which HUD would "assess its success and determine whether to implement the ACD process, on a permanent basis, throughout the country."  67 Fed. Reg. 66,038 (Oct. 29, 2002).  "With respect to which loans qualified for the ACD demonstration program, the October 2002 Notice added a requirement that '[t]o the knowledge of the participating mortgagee, the mortgage loan is not subject to an Indemnification Agreement as of the provisional claim approval date.'"  Compl. ¶ 18 (quoting 67 Fed. Reg. 66,041 (Oct. 29, 2002)).  In other words, if a loan was subject to an indemnification agreement, it could not be part of the ACD demonstration program.  HUD conducted four sales under the ACD demonstration program from 2002 to 2005. *Id*. ¶ 19.

In June 2006, HUD published an advance notice of proposed rulemaking to make the ACD program "a permanent part of HUD's single family mortgage insurance programs." *Id.* ¶¶ 20-23 (quoting 71 Fed. Reg. 32,392 (June 5, 2006)). The notice also provided that "upon codification" of the ACD program, the regulations "governing the assignment of mortgages to HUD," as well as those governing "the disposition of HUD-acquired single family property," would be amended to reflect the program's new requirements, policies, and procedures. *Id.* ¶ 23 (quoting 71 Fed. Reg. 32,392 (June 5, 2006)). However, "[i]n March 2007, the proposed rulemaking was withdrawn" and "HUD did not amend the regulations . . . to reflect the impacts or changes as a result of the ACD demonstration program." *Id.* ¶¶ 24-25. Nevertheless, HUD conducted subsequent bulk sales similar to those completed during the ACD demonstration program but which "were not subject to notice and comment procedures." *Id.* ¶ 32. Relevant to the instant case is sale number "SFLS 2013-2," which included the mortgage loan originated by Plaintiff discussed below. *Id.* ¶ 49.

The Office of Inspector General at HUD released a report, in July 2017, "finding that HUD was required to conduct notice and comment rulemaking to implement the SFLS/[Distressed Asset Stabilization] program, but had failed to do so." *Id.* ¶ 26. In response, HUD stated that the bulk note sales were "guided by a series of well documented procedures used both internally by staff and externally by stakeholders." *Id.* ¶¶ 27 (quoting HUD OIG Report No. 2017-KC-0006 at 10-11).

### B. The Springer Loan, Indemnification Agreement, and 2013 Sale

Plaintiff is an FHA-approved lender that "originates mortgage loans, including mortgages that are and were eligible for insurance under the [FHA] insurance program administered by HUD." *Id.* ¶ 2. Relevant here, Plaintiff "originated a $505,000 FHA loan . . . secured by a mortgage on a property in Brooklyn, New York" ("Springer loan"). ECF No. 8 at 8 ("Def.'s 12(b)(1) Mot. to Dismiss"). The Springer loan "closed and was endorsed for FHA insurance in October 2010. In December 2010, the owner and servicer of the mortgage, J.P. Morgan Chase Bank, N.A. (Chase), reported a delinquency and, in November 2011, the borrower defaulted." *Id.* (citations omitted).

"In 2012, HUD's Quality Assurance Division determined that AMB had engaged in 'non-compliant lending activities' when it originated the Springer loan, thereby exposing HUD to an unacceptable level of risk. HUD sent a letter to AMB directing it to sign an indemnification agreement, which AMB signed in December 2012." *Id.* (citations omitted); *see also* Compl. ¶ 38. The agreement "obligates AMB to indemnify HUD for all monetary losses suffered on an FHA-insured loan." ECF No. 9 at 5 ("Pl.'s Resp. to 12(b)(1)"). In pertinent part, the Indemnification Agreement provides:

> All HUD requirements for servicing and payment of mortgage insurance premiums will be observed with respect to such mortgages. In the event of a valid claim for insurance on any of the mortgages covered by this Agreement, indemnification will be in accordance with paragraph (b), (c), (d), or (e), whichever applies. HUD's Investment includes, but is not limited to: the full amount of the insurance claim actually paid, . . . prorated losses from and

> expenses associated with the sale of a note, . . . and any other expenses HUD may incur in connection with its claim disposition programs regarding FHA insured mortgages. To the extent HUD recoups any losses (e.g.[,] receipts for the sale of the property) or there is any discount on the property (e.g., an Officer Next Door discount), HUD will deduct the amount of the recoupment or discount from HUD's Investment.

Compl. ¶ 39 (quoting Ex. 3 at 1). Simply put, if HUD suffered a shortfall between what it paid out on the insurance claim on the defaulted mortgage and what it recovered in selling the note, Plaintiff was generally responsible under the Indemnification Agreement for making HUD whole.

In 2013, the mortgage's servicer, Chase, "sought to file an FHA insurance claim on the defaulted Springer loan by assigning the defaulted loan to HUD, one of several methods for an insurer to submit an insurance claim to HUD." Def.'s 12(b)(1) Mot. to Dismiss at 8. Under the SFLS program, HUD bundles defaulted notes that are assigned to HUD into pools and sells them at an auction to the highest aggregate bidder. *Id*. In order to participate in the program, "Chase entered into a Participating Servicer Agreement with HUD, which provided that loans subject to an indemnification agreement were ineligible for inclusion with the loans that are bundled and sold under HUD's [SFLS] program." *Id*. at 8-9; *see also* Compl. ¶¶ 64-67. Nevertheless, "Chase included the Springer loan in the pool of notes sold under that program in June 2013." *Id*. at 9. HUD's sale of the note on the Springer loan recovered $360,531.24. Compl. ¶ 88.

In August 2013, "Chase submitted an FHA insurance claim for $520,979.86 that included the unpaid principal balance on the Springer loan." Def.'s 12(b)(1) Mot. to Dismiss at 9; *see also* Compl. ¶ 72. Shortly thereafter, HUD paid Chase's insurance claim in full. Compl. ¶ 75. "In July 2014, HUD sent AMB a demand notice requesting payment of an alleged debt of $160,448.62, representing the difference between Chase's $520,979.86 insurance claim and HUD's recovery of $360,531.24 on the sale of the note. Because AMB did not pay the demand, in October 2014, HUD sent AMB a notice of intent to collect a Treasury offset in the amount of $160,448.62." Def.'s 12(b)(1) Mot. to Dismiss at 9 (citations omitted).

### C. Appeal of Offset, Subsequent Proceedings, and the Instant Case

"On December 17, 2014, AMB filed a timely agency appeal . . . of HUD's decision to seek administrative offset." Compl. ¶ 116. "After an administrative process that lasted almost exactly two years, the HUD Administrative Judge issued a Decision and Order on December 16, 2016," finding "the debt to be legally enforceable against AMB . . . ." *Id*. ¶¶ 118-119. Plaintiff appealed HUD's administrative decision to the United States District Court for the District of Columbia. *Id*. ¶ 120. The district court vacated and remanded HUD's ruling pursuant to the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), on the grounds that the HUD administrative judge who issued the decision was not properly appointed under the Constitution. *Associated Mortg. Bankers, Inc. v. Carson*, No. CV 17-0075 (ESH), 2019 WL 108882, at *9 (D.D.C. Jan. 4, 2019); *see also* Compl. ¶ 121.

On February 28, 2020, following a second administrative review, a HUD administrative law judge issued an opinion "finding that AMB was liable to pay its administrative offset debt." Def.'s 12(b)(1) Mot. to Dismiss at 9; *see also* Compl. ¶ 122 (citing ECF No. 1-2 at 19 ("ALJ Decision")).  The HUJ ALJ determined that HUD did not harm Plaintiff by selling the note through the SFLS program, nor did it materially breach the Indemnification Agreement.  *See* ALJ Decision at 8-18.

On March 16, 2020, Plaintiff filed a complaint "on behalf of itself and a class of similarly-situated mortgage lenders"—once again in the United States District Court for the District of Columbia—appealing the HUD ALJ's decision as arbitrary and capricious under the Administrative Procedure Act ("APA").  *See* Def.'s 12(b)(1) Mot. to Dismiss, App. A1-A290 ("Pl.'s Dist. Ct. Compl.").  Eleven days later, on March 27, 2020, Plaintiff filed its complaint in this Court for breach of contract and breach of the covenant of good faith and fair dealing.  Compl. at 1-2.  Plaintiff alleges here that HUD "breached the Indemnification Agreement in numerous ways; accordingly, it is barred from enforcing the contract against AMB."  *Id*. at 1.

In support of its argument, Plaintiff asserts, in pertinent part, that "[l]oans which are subject to indemnification agreements are not supposed to be sold as part of the SFLS bulk note sales" (*Id*. ¶ 43); the note was not sold by HUD at market value or to maximize value (*see id*. ¶¶ 56-61); due to the Indemnification Agreement on the loan, and the Participating Servicer Agreement's definition of "Eligible Mortgage Loans," Chase's "claim for insurance was not valid" (*id*. ¶ 76) and thus "HUD paid a non-valid claim for insurance in connection with the Loan" (*id*. ¶ 78); HUD breached the Indemnification Agreement, which requires Plaintiff to indemnify HUD "only for losses paid on a 'valid insurance claim,'" by failing to follow all HUD servicing requirements, and thus "AMB is not required to indemnify HUD in connection with the Loan" (*id*. ¶ 81-82); "HUD breached the Indemnification Agreement when it did not deduct the amount of the discount resulting from the bulk note sale from what it claims AMB owes under the Indemnification Agreement" (*id*. ¶ 94); and the Indemnification Agreement required HUD to sell the property instead of the note (*see id*. ¶ 95-100).  Plaintiff also takes issue with the HUD ALJ's decision, which it asserts "was contrary to the plain language of the Indemnification Agreement and not based on substantial evidence."  *Id*. ¶ 127.

On July 17, 2020, the government filed a motion to dismiss pursuant to RCFC 12(b)(1).  Citing 28 U.S.C. § 1500 and related precedent, the government argues that the Court "lacks jurisdiction to entertain AMB's complaint because, before filing its complaint in this Court, AMB filed a lawsuit . . . in the United States District Court for the District of Columbia based on substantially the same operative fact[s] as those in this case." [1]  Def.'s 12(b)(1) Mot. to Dismiss at 5.  The government asserts that "[e]ach case arises out of the same transactions" (*id*. at 6), "the two complaints are virtually identical" (*id*. at 7), and a comparison of the two "makes it clear that

---

[1] The government also argued that "because lawsuits against Federal agencies and private parties are beyond the jurisdiction of this court, the Court must dismiss the complaint against HUD and Secretary Ben Carson." Def.'s 12(b)(1) Mot. to Dismiss at 6.  The government is, of course, correct in its argument.  To the extent that naming HUD and Secretary Carson in the complaint was more than mere surplusage, the causes of action against HUD and Secretary Carson are dismissed for lack of jurisdiction.  *See, e.g., United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the [Court of Claims].").

this case is a 'repackaged suit – one reflecting damage claims that mirror the injunctive APA claims filed in the district court.'" *Id*. at 9 (quoting *Skokomish Indian Tribe v. United States*, 115 Fed. Cl. 116, 127 (2014)).

On August 17, 2020, shortly before Plaintiff filed its opposition to the government's motion to dismiss in this Court, Plaintiff's district court complaint was dismissed in its entirety. *See Associated Mortg. Bankers, Inc. v. Carson*, No. 20-CV-00744 (ESH), 2020 WL 4748091 (D.D.C. Aug. 17, 2020). In doing so, the district court analyzed "[w]hether the ALJ was correct to find that AMB's debt is past due and legally enforceable," which the court said "encompasses at least two sub-issues: (1) whether AMB's obligation to pay was triggered under the Indemnification Agreement; and (2) whether HUD materially breached the Agreement such that AMB was relieved of its duty to indemnify." *Id*. at *4. Moreover, the district court assessed "whether the ALJ was correct to conclude that the sale of the Springer Loan via a note sale, rather than foreclosure and sale of the property, did not harm AMB." *Id*. Addressing each, the district court concluded "that AMB's claim that [the HUD ALJ's] decision was arbitrary and capricious must be rejected." *Id*. It also analyzed whether HUD's inclusion of the Springer Loan in the bulk sale amounted to a breach of the covenant of good faith and fair dealing. Finding no such evidence of a breach, the district court concluded that "the ALJ was correct to find that HUD's 'innocent oversight' . . . provided no indication of bad faith." *Id*. at *7 (quoting ALJ Decision at 17).

In response, Plaintiff asserts that "[a] claim under the APA is fundamentally different from a breach of contract claim; accordingly, the government's assertion that this suit is a 'repackaged' APA claim is wrong." Pl.'s Resp. to 12(b)(1) at 5-6. Noting a 2017 dismissal of its breach claims from the same district court,[2] Plaintiff argues that its 2020 complaint "only brought APA claims seeking judicial review of the administrative offset order, and did not include the class action contractual breach claims. Conversely, the case before this Court only includes the class action contractual breach claims, and does not seek judicial review of the administrative offset order under the APA."[3] *Id*. at 10.

---

[2] Plaintiff's response brief explains:

> In January 2017, AMB filed an action in the U.S. District Court for the District of Columbia which sought judicial review of HUD's administrative offset order under the Administrative Procedure Act ("APA"), and also brought a class action against HUD on behalf of itself and other mortgage lenders for contractual breach claims related to HUD's improper collection of indemnification payments to which HUD was not entitled. . . . The District Judge in this earlier case ruled that AMB had properly stated a claim under the APA for review of the administrative offset order, but dismissed AMB's class action contractual breach claims, finding that the District Court lacked jurisdiction, and that the class action contractual breach claims had to be brought in the Court of Federal Claims under the Tucker Act. . . . The APA claims seeking review of the administrative offset order thus continued, while the class action contractual breach claims were dismissed.

Pl.'s Resp. to 12(b)(1) at 8-9 (citations omitted).

[3] Plaintiff suggests that the 2017 district court dismissal "was an express acknowledgment by the District Court that the two types of claims—judicial review under the APA versus a class action for money due to breach of contract—are not the same claim." Pl.'s Resp. to 12(b)(1) at 12.

6

Plaintiff also argues that the operative facts in each case are different, since "[t]he critical facts in the [district court] Case addressed the question of whether AMB allegedly owed a debt to HUD which was due and payable and will turn focus on the HUD procedures regarding when and if an administrative offset order should be granted," while the operative facts here "are those that go to a straightforward breach of contract analysis as to whether HUD has wrongfully taken money from AMB and the proposed class of lenders." *Id*. at 14.  Plaintiff suggests that "since this is a class action . . . . [t]he facts relevant to these other lenders and which would form the basis for the class action component of AMB's case are not a part of the [district court] Case."[4] *Id*.  Furthermore, Plaintiff takes issue with the scope of review conducted in the HUD ALJ proceeding, as well as the district court's review of it under the APA.  Referencing contract interpretation principles, Plaintiff argues that "[n]either the ALJ nor the District Court addressed these issues for the simple reason that they were not required to do so in order to reach their determinations that HUD's conduct was not arbitrary and capricious." *Id*. at 17.

On September 11, 2020, following an order of this Court, the government filed its reply to Plaintiff's response and, in so doing, raised an additional motion to dismiss pursuant to RCFC 12(b)(6) based on the doctrine of issue preclusion.  *See* ECF No. 11 ("Def.'s 12(b)(6) Mot. to Dismiss").[5]  The government, first, reiterates its argument that the two complaints are based upon the same operative facts and that a straightforward application of controlling precedent demands dismissal for lack of subject-matter jurisdiction. *Id*. at 8, 14-21.  Specifically, the government argues that "[c]ontrary to AMB's contention, the differences in the standards of review applied by the district court and by this Court do not have any bearing on the question of whether there is a substantial overlap in the operate [sic] facts in the district court case and in this case" (*id*. at 18), nor do the differences in legal theories. *Id*. at 20.  Moreover, "[b]ecause AMB's complaint is based on issues that were litigated and resolved in [the district court]" (*id*. at 7), and "[b]ecause the parties had a full and fair opportunity to litigate all of the issues relating to their

---

[4] Plaintiff attempts to argue that pleading this case as a class action somehow absolves it of its section 1500 jurisdictional problem in this Court.  Plaintiff's argument is unpersuasive.  The Court first notes that, despite Plaintiff's suggestions to the contrary, it clearly brought its claims in the district court "on behalf of itself and a class of similarly-situated mortgage lenders," just as it does here.  *See* Pl.'s Dist. Ct. Compl. at 1.  Assuming, for the sake of argument, that Plaintiff had not filed on behalf of a putative class in the district court, its putative class representation here would still make no difference in this Court's jurisdictional analysis.  The Court must first have subject-matter jurisdiction over the named Plaintiff's claim before it can proceed to the question of class certification, or any other merits issues for that matter. *See Johns–Manville v. United States*, 855 F.2d 1556, 1565 (Fed. Cir. 1988) ("A court may not in any case, even in the interest of justice, extend its jurisdiction where none exists."); *see also Associated Mortg. Bankers Inc. v. Carson*, 279 F. Supp. 3d 58, 64 (D.D.C. 2017) ("[T]he Court dismisses plaintiff's good-faith-and-fair-dealing claim for it cannot enter declaratory relief, injunctive relief, or certify a class where it lacks jurisdiction over the claim at issue.") (citing *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008)).

[5] On August 25, 2020, the then-assigned judge in this case issued an order providing that, in its reply to the Plaintiff's 12(b)(1) opposition, the government "shall address the implications of [the district court's August 17, 2020 dismissal], including a discussion of the doctrine of issue preclusion." ECF No. 10.  Under RCFC 12(g)(2), parties that have moved for dismissal under RCFC 12 are generally prohibited from making "another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." RCFC 12(g)(2).  Because the district court had not yet entered judgment against Plaintiff when the government filed its initial motion to dismiss on July 17, 2020, issue preclusion was not a "defense or objection that was available to" the government at that time.  Accordingly, the Court considers the government's subsequent motion to dismiss pursuant to RCFC 12(b)(6) timely and appropriately filed.

rights and responsibilities under the indemnification agreement, the district court's decision bars AMB from relitigating the contract issues before this Court" under the doctrine of issue preclusion. *Id*. at 8.

In its response brief on October 9, 2020, Plaintiff primarily takes issue with the government's argument that it had a full and fair opportunity to litigate its breach of contract claim in the prior proceedings. *See* ECF No. 12 at 6 ("Pl.'s Resp. to 12(b)(6)"). Plaintiff argues that it "was subjected to . . . an abbreviated administrative proceeding conducted with limited opportunity to conduct discovery, with no ability to cross-examine a previously undisclosed witness (among other errors), and in front of an employee of the agency whose conduct AMB was challenging." *Id*. Plaintiff further asserts that "[t]he results of this stacked tribunal are made plain in the ALJ's decision, from which AMB was further denied any right of meaningful appeal." *Id*. Moreover, Plaintiff argues that issue preclusion is limited when the prior proceeding was before an administrative agency instead of a court (*id*. at 7-8), that "neither the ALJ nor the District Court conducted an analysis of AMB's breach of contract claims" (*id*. at 11), HUD "was not acting in a judicial capacity" (*id*. at 13), and that the procedures afforded Plaintiff at HUD are insufficient to justify issue preclusion. *Id*. at 14-22.

In its final brief, the government replies that "(1) the HUD administrative judge, acting in a judicial capacity, properly granted the parties adequate opportunity to litigate all disputed issues that AMB seeks to raise in this Court; and (2) AMB had a full and fair opportunity to challenge the administrative judge's decisions in the district court. Hence, the doctrine of issue preclusion bars the Court from considering AMB's complaint." ECF No. 15 at 7 ("Def.'s Reply").

Following reassignment in January 2021, the Court held oral argument on the pending motions to dismiss, which are now ripe for review.

## II. DISCUSSION

### A. Legal Standard

#### *RCFC 12(b)(1) and 28 U.S.C. § 1500*

Under RCFC 12(b)(1), this Court must dismiss any claim that does not fall within its subject-matter jurisdiction. AMB "as the plaintiff, bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court must accept as true all undisputed factual allegations made by the non-moving party and draw all reasonable inferences in the light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also, e.g.*, *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2004) ("In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff.").

rights and responsibilities under the indemnification agreement, the district court's decision bars AMB from relitigating the contract issues before this Court" under the doctrine of issue preclusion. *Id*. at 8.

In its response brief on October 9, 2020, Plaintiff primarily takes issue with the government's argument that it had a full and fair opportunity to litigate its breach of contract claim in the prior proceedings. *See* ECF No. 12 at 6 ("Pl.'s Resp. to 12(b)(6)"). Plaintiff argues that it "was subjected to . . . an abbreviated administrative proceeding conducted with limited opportunity to conduct discovery, with no ability to cross-examine a previously undisclosed witness (among other errors), and in front of an employee of the agency whose conduct AMB was challenging." *Id*. Plaintiff further asserts that "[t]he results of this stacked tribunal are made plain in the ALJ's decision, from which AMB was further denied any right of meaningful appeal." *Id*. Moreover, Plaintiff argues that issue preclusion is limited when the prior proceeding was before an administrative agency instead of a court (*id*. at 7-8), that "neither the ALJ nor the District Court conducted an analysis of AMB's breach of contract claims" (*id*. at 11), HUD "was not acting in a judicial capacity" (*id*. at 13), and that the procedures afforded Plaintiff at HUD are insufficient to justify issue preclusion. *Id*. at 14-22.

In its final brief, the government replies that "(1) the HUD administrative judge, acting in a judicial capacity, properly granted the parties adequate opportunity to litigate all disputed issues that AMB seeks to raise in this Court; and (2) AMB had a full and fair opportunity to challenge the administrative judge's decisions in the district court. Hence, the doctrine of issue preclusion bars the Court from considering AMB's complaint." ECF No. 15 at 7 ("Def.'s Reply").

Following reassignment in January 2021, the Court held oral argument on the pending motions to dismiss, which are now ripe for review.

## II. DISCUSSION

### A. Legal Standard

#### *RCFC 12(b)(1) and 28 U.S.C. § 1500*

Under RCFC 12(b)(1), this Court must dismiss any claim that does not fall within its subject-matter jurisdiction. AMB "as the plaintiff, bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court must accept as true all undisputed factual allegations made by the non-moving party and draw all reasonable inferences in the light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also, e.g.*, *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2004) ("In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff.").

The United States Court of Federal Claims, like all federal courts, is a court of limited jurisdiction. Under the Tucker Act, the Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act "does not, of itself, create a substantive right enforceable against the United States . . . ." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to establish jurisdiction in this Court, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id*. Moreover, the plaintiff "must present a claim for 'actual, presently due money damages from the United States.'" *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (quoting *United States v. King*, 395 U.S. 1, 3 (1969)).

In addition, in order for this Court to have jurisdiction, a plaintiff must not run afoul of 28 U.S.C. § 1500, which provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. Section 1500 "was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories." *Trusted Integration*, 659 F.3d at 1163. The statute "is more straightforward than its complex wording suggests. The [Court of Federal Claims] has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 311 (2011). Accordingly, when considering a motion to dismiss under section 1500, this Court must make two inquiries: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Resource Invs., Inc. v. United States*, 785 F.3d 660, 664 (Fed. Cir. 2015) (quoting *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013)).

In terms of the pendency prong, the Supreme Court instructs that the section 1500 analysis, and therefore the jurisdiction of this Court, "'depends upon the state of things at the time of the action brought.'" *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824) (Marshall, C.J.)). Thus, section 1500 bars this Court from exercising jurisdiction "over the claim of a plaintiff who, *upon filing*, has an action pending in any other court 'for or in respect to' the same claim." *Id*. at 209 (emphasis added). In other words, under section 1500, jurisdiction is "dependent on the state of things when the action is brought, and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation." *Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1367 (Fed. Cir. 2012).

In addition, for section 1500 to apply, the two suits must also be "for or in respect to" the same claim. In *Tohono*, the Supreme Court held that "[t]wo suits are for or in respect to the same claim . . . if they are *based on substantially the same operative facts*, regardless of the relief sought in each suit," *Tohono*, 563 U.S. at 317 (emphasis added), or the legal theories asserted. *Keene*, 508 U.S. at 212. "Determining whether two suits are based on substantially the same operative facts 'requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit.'" *Trusted Integration*, 659 F.3d at 1164 (quoting *Keene*, 508 U.S. at 210). "Importantly, the legal theories underlying the asserted claims are irrelevant to this inquiry." *Brandt*, 710 F.3d at 1374 (citing *Trusted Integration*, 659 F.3d at 1164). Rather, in applying section 1500, this Court is to "compare the operative facts asserted at the time the two complaints were filed." *Cent. Pines*, 697 F.3d at 1364.

While not specifically addressing what an operative fact is, the Supreme Court in *Tohono* indicated that concentrating on operative facts is "consistent with the doctrine of claim preclusion, or res judicata, which bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" *Tohono*, 563 U.S. at 315 (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948)). "Reading § 1500 to depend on the underlying facts and not also on the relief requested gives effect to the principles of preclusion law embodied in the statute." *Id*. at 316. The Supreme Court further observed that "[t]he now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring 'claims arising from the same transaction.'" *Id*. (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482, n. 22 (1982)). More recently, the Federal Circuit "explained that '[u]nder *Tohono*, the question is whether the second Claims Court . . . suit would have been barred by res judicata if it had been brought in district court' under 'res judicata principles as of 1868, when the predecessor to § 1500 was first enacted.'" *Acetris Health, LLC v. United States*, 949 F.3d 719, 729 (Fed. Cir. 2020) (quoting *Res. Invs., Inc. v. United States*, 785 F.3d 660, 666 (Fed. Cir. 2015) (footnote omitted)). "At that time, the two tests for res judicata were the 'act or contract test' and the 'evidence test.'" *Id*. (citing *Trusted Integration*, 659 F.3d at 1169). "Under the 'act or contract test,' '[t]he true distinction between demands or rights of action which are single and entire, and those which are several and distinct, is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts.'" *Id*. (quoting *Tohono*, 563 U.S. at 316 (citation omitted)). "Under the 'evidence test,' two suits involve the same claim if 'the same evidence support[s] and establish[es] both the present and the former cause of action.'" *Id*. (quoting *Tohono*, 563 U.S. at 316 (citation omitted)). "If the suits are the 'same' under either of these tests, the Claims Court suit will be barred by section 1500." *Id*. (citing *Res. Invs., Inc.*, 785 F.3d at 666).

### *RCFC 12(b)(6)*

Of course, even if a plaintiff successfully establishes this Court's jurisdiction, the plaintiff must still present a valid claim on which the Court can grant relief. RCFC 12(b)(6). "When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor." *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791

(2014) (citing *Scheuer*, 416 U.S. at 236). Granting a motion to dismiss for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Denial of the motion is warranted when the complaint presents "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B. Analysis

A straightforward application of section 1500 to Plaintiff's complaint necessitates dismissal for lack of subject-matter jurisdiction.[6] First, it is clear, and Plaintiff does not dispute, that the first prong of section 1500 is met: whether an earlier-filed action was "pending" in another court at the time Plaintiff filed its complaint in this Court. Plaintiff filed its district court complaint on March 16, 2020, which was not dismissed until August 17, 2020. On March 27, 2020, while Plaintiff's district court case was pending, Plaintiff filed its complaint in this Court.

As to the second prong of the section 1500 analysis, Plaintiff simply cannot overcome the reality that the instant case shares substantially the same—if not entirely identical—operative facts to the earlier-filed action in district court. Comparing the conduct pleaded in the two counts in its complaint in this Court to the second count of its complaint in the district court, it becomes apparent that each count in this Court involves nearly identical conduct to the second count of the district court complaint. The only difference between the claims asserted in this Court and the district court is that Plaintiff asserts in this Court that the conduct led to a breach of contract and the covenant of good faith and fair dealing, while in district court Plaintiff asserted that the same conduct violated the APA by being arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. In both cases, the core conduct alleged was the breach of the Indemnification Agreement and related regulations. In the district court, this breach was cast as a violation of the APA; in this Court, it is cast as a straight breach of contract claim. However, whether brought under the APA or the Tucker Act, Plaintiff's claim in the district

---

[6] The Court also notes that the complaint does not appear to allege "actual, presently due money damages from the United States," which is a core requirement of the Court's Tucker Act jurisdiction. It contains no allegation or factual representation that Plaintiff ever paid the $160,448.62 pursuant to HUD's demand notice. Nor is there any allegation that Treasury actually withheld (or offset) the disputed amount. Rather, Plaintiff says only that "[o]n information and belief, Treasury *has or will* withhold monies that are owed to AMB as permitted under the offset statute." Compl. ¶ 150 (emphasis added). Plaintiff's prayer for relief seeks a declaration that HUD violated the Indemnification Agreement (*id*. ¶ 161(a)) and an enjoinment of HUD's ability to "collect[] any additional funds. . . ." *Id*. ¶ 161(c)). But Plaintiff's complaint does not contain a clear allegation that it has a right to actual, presently due money from the United States. This Court has previously dismissed claims for lack of subject-matter jurisdiction when such claims merely sought declaratory relief related to, or the cancellation of, an alleged debt. *See, e.g., Summit Power Grp., LLC v. United States*, 139 Fed. Cl. 369 (2018). The Federal Circuit has likewise dismissed claims under the Little Tucker Act that were for what was essentially "debt cancellation," as opposed to the refund of money already paid to the federal government. *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940 (Fed. Cir. 2007). Upon questioning at oral argument, Plaintiff's counsel represented to the Court that Plaintiff had paid the outstanding debt following the district court's August 2020 dismissal. Because the Court dismisses here on section 1500 grounds, it need not address this other potential Tucker Act jurisdictional defect of Plaintiff's complaint or whether Plaintiff's counsel's representation during oral argument would affect that analysis.

court and its claim here are substantially the same claim. Both arise out of the "same act or contract" and rely on the "same evidence." *See Tohono*, 563 U.S. at 316.

Indeed, the operative factual overlap is so substantial in this case that not only do the operative facts in the district court complaint overlap with the operative facts here, but the prayers for relief in each complaint recite verbatim the same six subparagraphs.[7]  *Compare* Compl. ¶ 161(a)-(g) *with* Pl.'s Dist. Ct. Compl. ¶ 245(b)-(h).  Although, after *Tohono*, section 1500 is no longer applied to require both the operative facts and the relief sought to be the same,[8] the complete overlap in the requested relief is nonetheless illustrative of the factual overlap between the two complaints.

In both the district court and in this Court, Plaintiff requested that the respective court:

| District Court Complaint | CFC Complaint |
| --- | --- |
| b. Declare that HUD violated the Indemnification Agreement that was executed in connection with the Loan, FHA Case No. 374-5838647 | a. Declare that HUD violated the Indemnification Agreement that was executed in connection with the Loan, FHA Case No. 374-5838647 |
| c. Enjoin HUD from collecting any additional funds pursuant to administrative offset and/or referring the debt to Treasury for collection | b. Enjoin HUD from collecting any additional funds pursuant to administrative offset and/or referring the debt to Treasury for collection |
| d. Certify this matter as a class action | c. Certify this matter as a class action |
| e. Issue a preliminary injunction restraining HUD, its officers, employees, agents, or servants from taking any actions against AMB, or the Lender Class, with respect to loans where there was an existing indemnification agreement in place and HUD subsequently included the loan in an ACD/SFLS/DASP sale | d. Issue a preliminary injunction restraining HUD, its officers, employees, agents, or servants from taking any actions against AMB, or the Lender Class, with respect to loans where there was an existing indemnification agreement in place and HUD subsequently included the loan in an ACD/SFLS/DASP sale |

---

[7] The only difference between the two complaints' prayers for relief is Plaintiff's request that the district court set aside the HUD ALJ's decision under the APA.  *See* Pl.'s Dist. Ct. Compl. ¶ 245(a).  Aside from that single subparagraph, the two prayers for relief are entirely identical.

[8] Prior to *Tohono*, the Federal Circuit applied section 1500 such that "[f]or the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts*, and must *seek the same relief*." *Lovelodies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc).

| | |
|---|---|
| f. Return funds improperly collected by HUD pursuant to indemnification agreements which are held in the MMI Fund | e. Return funds improperly collected by HUD pursuant to indemnification agreements which are held in the MMI Fund |
| g. Award AMB its attorney's fees and expenses incurred in this action | f. Award AMB its attorney's fees and expenses incurred in this action |
| h. Grant such other relief as the Court deems just and proper | h. Grant such other relief as the Court deems just and proper |

It is inconceivable that the operative facts necessary to entitle Plaintiff to each identical request for relief would be different in district court and this Court.  For example, the operative facts the district court would need to examine to "Declare that HUD violated the Indemnification Agreement that was executed in connection with the Loan, FHA Case No. 374-5838647" are necessarily that same operative facts that this Court would need to examine in order to issue the same requested declaration.  Whether applying the APA and its arbitrary and capricious standard or applying a breach of contract analysis under the Tucker Act, the operative facts needed to determine whether Plaintiff is entitled to a declaration that "HUD violated the Indemnification Agreement" are the same or substantially the same in both courts.  The same is true of the other six prayers for relief.

With this in mind and because determining whether claims arise from substantially the same operative facts "requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit," *Keene*, 508 U.S. at 210, the Court now turns to the analysis of the two causes of action pled in this Court versus the Plaintiff's second cause of action in the district court.[9]

### *Count I for Breach of Contract is Barred by § 1500*

The first count of Plaintiff's complaint alleges that HUD materially breached the Indemnification Agreement in five different ways and that these material breaches render the Indemnification Agreement unenforceable.  Plaintiff's district court complaint contained a count alleging that this same conduct was arbitrary, capricious, and contrary to law and therefore violated the APA.  Plaintiff argues that "[a] *claim* under the APA is fundamentally different from a breach of contract *claim*" in this Court and accordingly "the government's assertion that this suit is a 'repackaged' APA claim is wrong."  Pl.'s Resp. to 12(b)(1) at 1-2 (emphasis added).  Plaintiff's argument, however, ignores the Supreme Court's instruction as to the test that guides this Court's section 1500 analysis.

The Supreme Court in *Tohono* was clear:  "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially

---

[9] Count I of Plaintiff's district court complaint—alleging that HUD violated the APA by failing to promulgate rules governing the SFLS program through notice and comment rulemaking—is not relevant to the section 1500 analysis in this Court.

13

the same operative facts, regardless of the relief sought in each suit."[10]  *Tohono*, 563 U.S. at 317. In other words, in applying section 1500 to this case, the question is not whether Plaintiff sought relief under the APA in district court and relief under the Tucker Act for breach of contract in this Court.  Rather, the question is what facts were essential to prove Plaintiff's district court APA claim and what facts are essential to prove Plaintiff's Tucker Act claim in this Court.  If the essential facts for the APA claim and the Tucker Act claim are substantially the same, Plaintiff's complaint before this Court must be dismissed.  Contrary to Plaintiff's assertion, the fact that its district court action proceeded under the APA, while the instant action proceeds under the Tucker Act, is irrelevant to this inquiry.  *Trusted Integration*, 659 F.3d at 1166 (observing that it is "clear that the legal theories asserted before the district court and the CFC are irrelevant to whether the claims arise from substantially the same operative facts").

Rendering judgment on Plaintiff's complaint under the APA required the district court to determine what the *same* terms of the *same* Indemnification Agreement required (or prohibited) of the *same* party—HUD—that this Court would be required to examine to render judgment on Plaintiff's Tucker Act breach of contract claim.  The district court determined, and this Court would likewise need to determine, whether HUD violated its duties under the terms of the Indemnification Agreement and the regulatory scheme surrounding that agreement.  Such a determination rests not just on substantially the same operative facts but, in fact, on entirely *identical* operative facts—namely, the language in the agreement, HUD's actions (or inactions) that allegedly breached the agreement, HUD's actions (or inactions) that allegedly violated HUD policies and procedures and therefore constituted a breach, and the language in the mortgage servicer's Participating Servicer Agreement, which HUD allegedly also breached.  Moreover, if the Court determined that these breaches did occur, it would need to look at the same operative facts the district court already looked at to determine whether the breaches were material and whether Plaintiff was actually harmed as a result of those breaches.

Count I of Plaintiff's complaint in this Court alleges that "HUD materially breached the Indemnification Agreement by . . . [s]elling the Note in a bulk note sale . . . ."  Compl. ¶ 153(a). This Court would not need to expend much energy determining how to factually analyze that claim, as the allegations in Count II of Plaintiff's district court complaint, in fact, give the Court the roadmap:  HUD "did not have the legal authority to sell the Loan as part of the SFLS program. . . failed to exclude the Loan from the SFLS contrary to its own requirements. . . [and] willfully or recklessly disregarded its own policies and procedures by allowing loans with indemnification agreements to be included in the SFLS."  Pl.'s Dist. Ct. Compl. ¶¶ 239-241.

Furthermore, Plaintiff alleges in this Court that HUD breached the agreement by "[p]aying an *invalid claim* and *then requiring AMB to perform by reimbursing HUD* for the entire amount of the invalid claim . . . [f]ailing to comply with the requirement of the indemnification agreement that all HUD requirements for servicing will be observed . . . *[f]ailing to properly discount* or prorate the amount sought by HUD as indemnification . . . [and] *[i]mproperly utilizing subsection 1.d) of the indemnification agreement* to dispose of the collateral because at the time the Indemnification Agreement was executed, the claim for the

---

[10] As discussed above, in this case Plaintiff's claims are not only based on the same operative facts but also seek the same relief.

14

Loan was not 'pending,' nor had it been 'paid.'" Compl. ¶¶ 153(b)-(e) (emphasis added). Similarly, in Count II in the district court, Plaintiff alleges that the "Indemnification Agreement *does not require AMB to indemnify* HUD for the *invalid claim* in this case; because *it did not properly discount* the alleged amount AMB owes as required under the Indemnification Agreement; and because *HUD acted contrary to the requirements of the Indemnification Agreement* which excused AMB's obligations to pay." Pl.'s Dist. Ct. Compl. ¶ 242 (emphasis added).

All of these allegations require analysis of the *same* contract, the *same* actions and transactions, and would necessarily call upon the *same* evidence. Moreover, both complaints assert extensive and almost entirely verbatim allegations regarding:

- How the bulk sales are contrary to HUD's regulations governing note sales (*compare* Compl. ¶¶ 29-37 *with* Pl.'s Dist. Ct. Compl. ¶¶ 60-69);
- The specific requirements under AMB's Indemnification Agreement with HUD (*compare* Compl. ¶¶ 38-42 *with* Pl.'s Dist. Ct. Compl. ¶¶ 74-78);
- the sale of the note underlying the loan (*compare* Compl. ¶¶ 43-55 *with* Pl.'s Dist. Ct. Compl. ¶¶ 79-93);
- How the note was not sold at market value or to maximize value (*compare* Compl. ¶¶ 56-61 *with* Pl.'s Dist. Ct. Compl. ¶¶ 106-111, 114);
- Insurance claims for SFLS mortgages and Chase's PSA (*compare* Compl. ¶¶ 62-68 *with* Pl.'s Dist. Ct. Compl. ¶¶ 116-122);
- Chase's insurance claim on the loan (*compare* Compl. ¶¶ 69-82 *with* Pl.'s Dist. Ct. Compl. ¶¶ 123-135);
- HUD's sale of the note at a "discount" (*compare* Compl. ¶¶ 83-94 *with* Pl.'s Dist. Ct. Compl. ¶¶ 136-147); and
- HUD's requirement to sell the property instead of the note (*compare* Compl. ¶¶ 95-100 *with* Pl.'s Dist. Ct. Compl. ¶¶ 148-153).

These are "not mere background facts; they are critical to plaintiffs' claims in both actions." *See Cent. Pines Land Co.*, 697 F.3d at 1365. Nothing revealed at oral argument dissuades the Court from that conclusion.

Taken together, there is "neither a temporal nor categorical distinction between [Plaintiff's] claims here and those against the United States" in district court. *See Skokomish Indian Tribe,* 115 Fed. Cl. at 130. In objecting to the enforceability of the indemnification agreement in both forums, it was Plaintiff that made "substantially the same operative facts" relevant to both forums. The Court cannot see how Plaintiff's breach of contract claim here, in comparison with Count II of its complaint in district court challenging the same actions by HUD under the APA, is anything other than "carving up a single transaction into overlapping pieces." *Tohono*, 563 U.S. at 315. Accordingly, Count I of Plaintiff's complaint must be dismissed for lack of subject-matter jurisdiction under section 1500.

### *Count II for Breach of the Covenant of Good Faith and Fair Dealing is Barred by § 1500*

Assessing the merits of Count II of Plaintiff's complaint would require this Court to examine the same operative facts as those outlined above for Count I. Count II alleges HUD breached the covenant of good faith and fair dealing "by failing to screen the list of loans provided by the servicers to remove those loans with an indemnification agreement . . . [and] by conducting bulk note sales when it lacked the statutory and regulatory authority to do so." Compl. ¶¶ 159-160. As with Count I of Plaintiff's complaint, the Court finds that Count II contains nearly verbatim factual allegations of HUD's lack of legal authority and failure to screen loans that are found in Plaintiff's district court complaint. *See* Pl.'s Dist. Ct. Compl. ¶¶ 239-241. Indeed, the district court, in reviewing Plaintiff's complaint and allegations that HUD violated its own policies and procedures, considered this argument under the heading: "Breach of the Covenant of Good Faith and Fair Dealing." *Associated Mortg. Bankers, Inc.,* No. 20-CV-00744 (ESH), 2020 WL 4748091 at *7. The district court determined that the "ALJ's conclusion that HUD's actions did not breach the Indemnification Agreement's implied covenant of good faith and fair dealing is supported by substantial evidence," and "the ALJ was correct to find that HUD's 'innocent oversight,' which caused no harm to AMB, provided no indication of bad faith." *Id*. (citations omitted).

While the district court's opinion on this issue in and of itself is not conclusive for purposes of section 1500, there can be no question that the operative facts presented by Plaintiff in support of Count II in this Court and those presented by Plaintiff in the district court in support of its APA claim substantially overlap: the district court literally considered whether HUD breached the covenant of good faith and fair dealing. Accordingly, Count II of Plaintiff's complaint is dismissed for lack of subject-matter jurisdiction under section 1500.

### *Issue Preclusion*

As noted above, the Court does not need to reach a conclusion on the question of issue preclusion given the necessity of dismissal for lack of subject matter jurisdiction under section 1500. Nevertheless, given how closely related the analysis under section 1500 and the analysis for issue preclusion are, a short review of the issue raised by the government's 12(b)(6) motion is illustrative of why its 12(b)(1) motion must be granted. *See Trusted Integration*, 659 F.3d at 1164 ("The Supreme Court noted that, by focusing only on the operative facts, its holding was generally consistent with the doctrine of res judicata, and, therefore gave 'effect to the principles of preclusion law embodied in [§ 1500].'") (quoting *Tohono*, 563 U.S. at 316).

When considering whether issue preclusion applies, the Federal Circuit instructs this Court to first ask whether "the issue is identical to the one decided in the first action," and, if so, whether the "issue was actually litigated in the first action." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). On these questions, the Court generally concurs with the government: "the issues that were raised and adjudicated administratively and in the district court case are identical to the issues that AMB has raised in this case." Def.'s 12(b)(6) Mot. to Dismiss at 23. Plaintiff's objections—namely, that the "ALJ did not conduct an analysis of whether there was a breach of contract" and "[t]he District Court similarly did not independently analyze what the contract

16

meant"—are unavailing. Pl.'s Resp. to 12(b)(6) at 9. The HUD ALJ, in noting that Plaintiff itself "argue[d] that HUD breached the Indemnification Agreement in five different ways," analyzed each and concluded that HUD "did not materially breach the Indemnification Agreement." ALJ Decision at 12-17.

In determining whether the HUD ALJ was correct, the district court analyzed "whether AMB's obligation to pay was triggered under the Indemnification Agreement; and (2) whether HUD materially breached the Agreement such that AMB was relieved of its duty to indemnify." *Associated Mortg. Bankers, Inc.,* No. 20-CV-00744 (ESH), 2020 WL 4748091 at *4. Finding the obligation legally triggered, and finding no such breach, the district court dismissed Plaintiff's complaint. Plaintiff may be displeased with these outcomes, but that displeasure does not mean it is entitled to a third bite at the apple in this Court.

The Court also generally concurs with the government on the remaining two questions that establish preclusive effect. *See Freeman*, 30 F.3d at 1465 (holding that the third and fourth prongs of the test for issue preclusion are "resolution of the issue was essential to a final judgment in the first action" and "plaintiff had a full and fair opportunity to litigate the issue in the first action"). Resolution of the very same issues Plaintiff raises here was essential to the decisions of both the HUD ALJ and the district court. For the HUD ALJ to determine whether the debt was legally enforceable against Plaintiff, it had to examine whether the Indemnification Agreement created a legally binding obligation on Plaintiff to reimburse HUD and, if so, whether a breach occurred that would obviate that obligation. *See* ALJ Decision at 7-18. Plaintiff, nevertheless, repeats its objection that "neither the ALJ nor the District Court conducted an analysis of AMB's breach of contract *claim*." Pl.'s Resp. to 12(b)(6) at 11. Even if this Court accepts that assertion as true, it has no bearing on whether the *issues*—not claims—that the HUD ALJ and district court analyzed were essential to a final judgment in those proceedings. On that question, Plaintiff provides no convincing argument, instead focusing on its alleged lack of a "full and fair opportunity to litigate its breach of contract claim" and attacking the "cribbed procedures" of "a biased tribunal . . . ." *Id*. at 12.

Finally, aside from what mostly appear as general objections to administrative review under the APA, the Court finds nothing in the briefing before it to indicate that Plaintiff has been denied a full and fair opportunity to litigate the very same *issues* it raises in the instant case. The Supreme Court has held that re-litigation of issues is warranted only "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in the prior litigation." *Freeman* 30 F.3d at 1467 (citing *Montana v. United States*, 440 U.S. 147, 164 & n. 11 (1979)). The Court would, necessarily, more fully examine this question if it had jurisdiction over Plaintiff's complaint; however, as with the rest of the issue preclusion analysis, the Court only briefly examines this prong as further reinforcement of its conclusion with regard to section 1500.

Although sufficient evidence favors preclusion, the Court refrains from deciding the issue here other than to note that for the same reasons the facts favor preclusion, the facts necessitate dismissal under section 1500.

## III. CONCLUSION

For the forgoing reasons, the Court lacks jurisdiction over Plaintiff's complaint. Accordingly, the government's Motion to Dismiss pursuant to RCFC 12(b)(1) and 28 U.S.C. § 1500 is **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge